Filed 4/29/13  P. v. Gutierrez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE GUTIERREZ,<br><br>    Defendant and Appellant. | B240910<br><br>(Los Angeles County<br>Super. Ct. No. LA066422) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Martin L. Herscovitz, Judge.  Affirmed.

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Jose Gutierrez appeals from the judgment entered following his plea of guilty to two counts of carjacking (Pen. Code, § 215, subd. (a)),[1] and one count of second degree robbery (§ 211), during each of which he personally used a firearm (§ 12022.53, subd. (b)), and his admissions that, with regard to the robbery, he committed the offense for the benefit of, at the direction of and in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)) and previously had been convicted of and served prison terms for possession of cocaine for the purpose of sale (Health & Saf. Code, § 11351) and the unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) within the meaning of section 667.5, subdivision (b). The trial court sentenced Gutierrez to 33 years 8 months in prison. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

At approximately 1:30 p.m. on October 27, 2010, Jerry Delgado was working on his car, a 1985 Monte Carlo Super Sport, in the driveway in front of his house located in the 11000 block of Dron Field Avenue in Los Angeles. Two men in their 20's, neither of whom Delgado knew and both of whom were wearing baseball caps, approached him and told him to "give up [his] car" and " 'everything that [he had].' " The men, one of whom was carrying a revolver, then "just took the car," Delgado's cellular phone and his necklace. After the men left, Delgado's mother called the police.

When police officers arrived approximately a half-an-hour later, Delgado told them that one of the individuals who had approached him, the man with the gun, had been wearing a blue Dodger's jacket. Delgado had also noticed that the man with the gun had tattoos on his hands.

Later that day, police officers asked Delgado to view an individual they had in custody. Delgado could not remember if he told a police officer that he recognized the

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    The facts have been taken from the transcript of the preliminary hearing.

2

man as the person who had approached him with a gun. However, when Delgado was asked to view a second individual, he told police officers that the man was "the one who was there, but did not have the gun[.]"

Since the incident, Delgado's car has been returned to him. The vehicle had not been damaged.

Rhuan Partida lives in the 7000 block of Hinds Avenue in Los Angeles. At approximately 3:30 p.m. on October 27, 2010, he was just arriving home from the gym. He was driving his father's 1994 Mustang and, as he had turned the corner from Stagg Street onto Hinds, he saw Gutierrez and his codefendant, Erick Lepe, walking down Stagg. Gutierrez was wearing a blue and black Dodger's jacket and Lepe was wearing a dark sweater. When Partida turned the corner onto Hinds Street, Gutierrez and Lepe also turned the corner. After Partida stopped the car, the men approached him and each man asked him for a cigarette. Partida was about to give them cigarettes when Gutierrez "asked [him] for the keys to the car." Partida hesitated and Gutierrez, who was standing at the door to the car, pulled a chrome revolver out of his jacket or pants and pointed it in Partida's direction. Although Partida told Gutierrez he did not want the car "because it was a slow car," Gutierrez told Partida to give him the keys or he would shoot. Partida asked Gutierrez if he could get his gym bag and Gutierrez told him "no" and to "get out of the car." Partida then gave up the car and Gutierrez drove it away.

Later that day, Partida spoke with police officers who asked him if he could identify individuals they had in custody. Partida identified Gutierrez and Lepe as the men who had taken his car. In addition, he looked at a chrome revolver and indicated that it appeared to be the same one Gutierrez had pointed at him.

The Mustang was later returned to Partida. The car had not been damaged.

Los Angeles Police Department Detective Richard Acevedo assisted another officer in the investigation of the carjacking which had occurred on Dron Field on October 27, 2010. At some point in the afternoon, Acevedo went to Delgado's residence, picked him up and transported him to the intersection of San Fernando Road and

Luddington Street in Sun Valley for a field show-up. After informing Delgado that the two individuals he was about to view were "possible suspect[s] only," Delgado was shown Gutierrez and Lepe. When Delgado was shown the first individual, who was not wearing the Dodger jacket, he spontaneously said, " 'That's him, officer. That's him.' " Delgado then indicated that the man he had been shown was the one who had acted as a "lookout."

When Gutierrez, who was wearing a blue Dodger jacket, was then brought out, Delgado again spontaneously identified him. He told Acevedo, " 'That's him. That's him, officer.' " " 'That's the fucker.' " Delgado indicated that Gutierrez was the one who had pointed a silver handgun at him and to whom he had given his gold necklace. Gutierrez had then gotten into Delgado's car and, as he had driven it away, had shouted out that he was from the "Vineland Boys."

Cesar Contreras is a police officer assigned to "Foothill area patrol." Shortly after 1:30 p.m. on October 27, 2010, Contreras had responded to a call regarding a carjacking at the 11000 block of Dron Field Avenue in Los Angeles. As he and his partner were headed toward Dron Field, they were "flagged . . . down" by Delgado at the intersection of Glen Oaks and Pierce. Delgado described the carjacking suspects as male Hispanics who were about 5 feet 9 inches tall and who both had tattoos of the letters "V," "B" and "S" on their necks. Delgado told Contreras that one of the men had a gun which he had pointed at Delgado's stomach before telling Delgado to " '[g]ive it up.' " The man had then forcefully "ripped" Delgado's gold necklace from his neck.

At approximately 3:40 that same afternoon, Contreras and his partner were in the vicinity of San Fernando Road and Penrose, approximately five miles from Dron Field Avenue and approximately five minutes from Hinds Avenue. There, the officer observed a red Mustang "which had been broadcast[] as [having been] taken in a[n] armed carjacking." The passenger, as one of the suspects had been described, was wearing a blue Dodger jacket and Contreras formed the opinion that the Mustang "was possibly the vehicle [which had been] taken in the carjacking." Contreras decided to pull the vehicle

4

over and stop it. The occupants of the car were Gutierrez and Lepe. At that point, Lepe was driving the vehicle and Gutierrez was riding in the passenger seat. When Contreras's partner later searched the car, he found a loaded silver .22 caliber revolver tucked between the center console and the driver's seat. Partida later identified the Mustang as the car which had been taken from him.

In 2010, Los Angeles Police Department Officer Jesus Martinez was assigned to the Foothill Gang Enforcement Detail. The officer is familiar with the Vineland Boys gang and their territory. The 11000 block of Dron Field is approximately two blocks outside the gang's territory and the 7000 block of Hinds Avenue is within Vineland Boys' territory. According to Martinez, gang members "often tattoo themselves with the letters V-B-S for Vineland Boys" and frequently wear modified Seattle Mariner's hats. The gang's primary activities include "robberies," "grand theft autos," "narcotics sales," "assaults," "burglaries," "home invasions" and "vandalism." They also perform "carjackings" and have been known to commit murder and intimidate witnesses.

Martinez was familiar with both Gutierrez and Lepe. With regard to Gutierrez, the officer indicated that he is a "self-admitted" member of the Vineland Boys gang and has numerous gang tattoos. In addition, Martinez had had numerous contacts with Gutierrez in that he had monitored his activities and conducted his parole checks. It was Martinez's opinion that crimes such as the carjackings and robbery allegedly committed by Gutierrez and Lepe were committed for the benefit of the Vineland Boys Street gang. Commission of the crimes "escalate[d]" both the member's standing within the gang and the gang's reputation within the community.

2. *Procedural history*.

In an information filed March 16, 2011, Gutierrez was charged with two counts of carjacking (§ 215, subd. (a)), during each of which he personally used a firearm, a handgun (§ 12022.53, subd. (b)) (counts 1 and 3), and one count of second degree robbery (§ 211), during which he personally used a firearm, a handgun (§ 12022.53, subd. (b)) (count 2). It was further alleged with regard to the carjackings that the offenses

had been committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(4)) and, with regard to all three counts, that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members (*id.*, subd. (b)(1)(C)). It was also alleged with regard to all three counts that the offenses were serious and violent felonies pursuant to section 1192.7, subdivision (c)(8) and section 667.5, subdivision (c)(8). Finally, it was alleged that Gutierrez had suffered prior convictions for possession of cocaine for the purpose of sale (Health & Saf. Code, § 11351) and the unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) for which he served prison terms within the meaning of section 667.5 and that he had previously been convicted of three felonies, including possession of narcotics (Health & Saf. Code, § 11377, subd. (a)) within the meaning of section 1203, subdivision (e)(4).

At proceedings held on April 14, 2011, counsel for Gutierrez indicated that there were issues in the matter which could require a "dual jury" or "severance." The trial court then encouraged counsel to "force the prosecutor's hand by filing a motion to sever."

At the same proceedings, Gutierrez indicated he was having problems with his counsel. The trial court decided to hold a *Marsden*[3] hearing and, after the prosecutor left the courtroom, Gutierrez complained that his counsel was not providing him with transcripts and reports of all the proceedings. He indicated that he wished to "study [his] case page by page." In addition, Gutierrez wanted his counsel to file several motions, including a *Pitchess*[4] motion, but she had not done so.

Counsel responded, indicating that in cases where there are gang allegations, her policy is to not provide the defendant with copies of documents. She explained that the

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

[4]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

"first reason [was] that ultimately, [they would] end up in the hands of somebody else in county jail, who [would] then most likely try and snitch him out. [¶] The second reason [was] that[,] if for some reason, and especially in a gang-related [case], if something were to happen to one of the witnesses, [she] could be charged with a crime." Counsel did, however, read to Gutierrez, "line by line," everything in the reports and record which had been presented up to that point. Counsel then indicated that Gutierrez had not asked her to file a *Pitchess* motion and, in any event, she did not think such a motion was appropriate in this case. The matter involved two civilians who were allegedly carjacked and they had both testified at the preliminary hearing. There had been no indication of officer misconduct.

When the trial court indicated it believed counsel's reason for withholding written records was a "good" one, Gutierrez cursed at the court. The trial court responded to Gutierrez's outburst, stating, "That says something to me, Mr. Gutierrez, about your attitude toward [your counsel] and the court. . . . [Y]ou don't even have to be in court if you don't want." "You can sit in [the] lockup . . . ." The trial court then denied Gutierrez's *Marsden* motion.

On April 25, 2011, the trial court indicated that it was its understanding Gutierrez and the prosecutor had reached a plea agreement. After indicating Gutierrez faced a sentence of 45 years and four months to life, the trial court stated that the agreement was for 33 years 8 months in state prison.

Gutierrez indicated he understood and was waiving his right to a jury trial, his right to confront and cross-examine the witnesses against him, his privilege against self-incrimination, the right to remain silent and his right to present a defense during which he could testify and subpoena witnesses to testify on his behalf. He then pled guilty to two counts of carjacking, as alleged in counts 1 and 3 of the information, and admitted that, during the commission of the crimes, he used a firearm. Gutierrez also pled guilty to second degree robbery as alleged in count 2 of the information and admitted that, during the offense, he personally used a firearm. Finally, Gutierrez admitted that, with regard to

7

the robbery alleged in count 2, he had committed the offense for the benefit of, at the direction of and in association with a criminal street gang with the specific intent to promote, further and assist criminal conduct by gang members.

After taking the pleas and admissions, the trial court had Gutierrez swear he would tell the truth, then asked him if he was pleading guilty to the three crimes because "in truth and in fact, [he] did commit those crimes" and used a firearm during their commission. Gutierrez responded, "Yes." The court then asked Gutierrez if he had committed the crimes as a "Vineland Boys Gang member with the intent to further Vineland Boys activity[.]" Gutierrez again responded, "Yes." Finally, the trial court asked Gutierrez if Lepe "participated in the commission of [the] crimes" and whether he was "an associate of the Vineland Boys." Gutierrez again answered, "Yes."

With regard to his prior convictions and prison terms, the trial court asked Gutierrez if he admitted that, "pursuant to . . . section 667.5[,] subdivision (b)," he had been convicted of possession for sale of a controlled substance and joyriding and "served a term in state prison for each of those . . . felonies and that [he] did commit another offense resulting in a state prison conviction within five years subsequent to the conclusion of each of those terms." Gutierrez responded, "Yes."

The trial court then found Gutierrez had "expressly, knowingly, understandingly, and intelligently waived his constitutional rights" and that his pleas and admissions had been "freely and voluntarily made." The court accepted Gutierrez's pleas and admissions and found him guilty of the crimes to which he had pled and the allegations he had admitted.

At proceedings held on March 16, 2012, Gutierrez made a motion to withdraw his plea. After being sworn as a witness, Gutierrez testified he had entered the plea and admitted the allegations simply because it seemed like "the best idea at the moment." He then, however, indicated that he had not known "what [he] was getting into in this case." Although his counsel had gone "over the allegations . . . , the potentials of sentencing, [and his] defenses to the gang allegation," she had not informed Gutierrez that his former

8

codefendant, Lepe, had had the gang allegations dismissed before he entered a plea. According to Gutierrez, his counsel also failed to inform him of his "maximum exposure" in the matter. Gutierrez indicated he had entered his plea "out of fear" and that it had not been a "knowing and intelligent plea."

After Gutierrez waived the attorney-client privilege, his trial counsel testified that with regard to his case she had "[gone] over [in detail] the facts as indicated in the arrest report," and had informed him of the "minimum and maximum amount[s] of time that [he was] looking at. [She got] his side of the story" and went "over any consequences regarding the particular charges against him." She also "talk[ed] about the possible defenses [Gutierrez might] have." Counsel indicated she had told Gutierrez that, if he were to go to trial in this matter, "he was facing a life sentence" and, "based upon the facts of the case, as well as the preliminary hearing and everything [she] had evaluated with [regard to] the case, [Gutierrez should] accept the offer to avoid a life sentence." When asked if Gutierrez had agreed with her, counsel responded, "He not only agreed with me, he had been asking for an offer ever since the beginning of the case." Counsel stated she had not "threaten[ed] [Gutierrez] in any way to force him to take the deal" and she had not "scare[d] him into taking [a] plea [offer]."

When the trial court asked counsel if she had made "a professional assessment of the People's ability to prove the gang allegation[,]" counsel responded, "Yes." Counsel believed that, based upon the arrest report and the evidence produced at the preliminary hearing, the People would be able to prove "the two gang allegations as alleged: both the 186.22[, subdivision] (b) allegation, as well as the 186.22[, subdivision] (c) allegation, the life allegation."

On cross-examination, when it was indicated that Gutierrez's codefendant in this matter had "had the gang allegation stricken in his case," counsel responded, "That is incorrect."

The trial court indicated it had reviewed the preliminary hearing transcript which indicated one of the witnesses had heard one of the defendants yell out " 'Vineland

9

Boys,' at the conclusion of the robbery or carjacking[.]"  The court had also reviewed the expert witness testimony given on behalf of the People.  In addition, the trial court had reviewed the transcript of the plea proceedings, during which the court had, after a fairly lengthy discussion, advised Gutierrez that he was "facing multiple life sentences."  The court had then explained to Gutierrez that the agreement was "33 years, eight months, with the rest of this case being dismissed."  When the court had asked Gutierrez if he understood, he had responded, " 'Yes.' "  A review of the transcript also indicated that, when the court asked Gutierrez "whether the gang allegation was true," he had answered, " 'Yes.' "  In addition, Gutierrez had, when questioned, indicated that he and Lepe had committed the crimes "as Vineland Gang members with the intent to further the Vineland Boys' activities[.]"

After indicating that "there was an ample factual basis for the plea" and the plea negotiations appeared to have been "reasoned" and "well-thought-out," the trial court concluded there was no evidence before it that Gutierrez "was not aware of what he was facing" or that he admitted anything which was not true.  Accordingly, the trial court denied his motion to withdraw his plea.

After indicating it had read the probation report, the trial court sentenced Gutierrez to the high term of nine years in prison for his conviction of carjacking as alleged in count 1.  For his personal use of a firearm during the offense, the court imposed a term of 10 years, for a total of 19 years.  For the robbery, the trial court sentenced Gutierrez to one-third the mid-term, or one year, and three years four months for his use of a firearm during the offense.  For the gang enhancement, the court sentenced Gutierrez to an additional three years four months, for a total of seven years eight months as to count 2.  With regard to the carjacking alleged in count 3, the court imposed a term of one-third the mid-term, or one year eight months, and for his use of a firearm during the offense, a term of three years four months.  For his "state prison priors" alleged pursuant to section 667.5, subdivision (b), the court imposed a consecutive term of two years.  In total, Gutierrez was sentenced to the agreed-upon term of 33 years 8 months in prison.

10

The trial court ordered Gutierrez to pay Delgado $800 in actual restitution (§ 1202.4, subd. (f)), a $3,000 restitution fine (§ 1202.4, subd. (b)), a stayed $3,000 parole revocation restitution fine (§ 1202.45), a $40 court security fee for each of the three counts (§ 1465.8, subd. (a)(1)) and a $30 criminal conviction assessment for each of the three counts (Gov. Code, § 70373). The court then awarded Gutierrez presentence custody credit for 507 days actually served and 76 days of good time/work time, for a total of 583 days.

The court granted the People's motion to dismiss all remaining counts and allegations.

Gutierrez filed a timely notice of appeal on April 23, 2012. He also filed a request for a certificate of probable cause, which the trial court granted on April 30, 2012.

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed November 28, 2012, the clerk of this court advised Gutierrez to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. On January 3, 2013, Gutierrez's request for an extension of time within which to file his supplemental brief was granted to January 28, 2013. In his letter brief filed that day, Gutierrez asserted that the allegation he had committed the robbery in count 2 for the benefit of, at the direction of, and in association with a criminal street gang was not true. He claimed to have admitted the allegation only because the district attorney had threatened him by telling him that if he did not admit it, the People would ensure that he was sentenced to prison for life. In addition, Gutierrez contended that his own counsel had failed to adequately represent him. He indicated that she left him to his own "resources" and that, because of her lack of attention, he was "forced into [t]his deal."

Gutierrez's contentions are without merit. Not only did he admit that the robbery had been committed for the benefit of a criminal street gang, after he entered his pleas the

11

trial court placed him under oath and specifically asked him if he had committed the crimes as a "Vineland Boys Gang member with the intent to further Vineland Boys activity" and whether Lepe had participated in the commission of the crimes as "an associate of the Vineland Boys." It was only after his counsel had read to him "line by line" everything in the police reports and had reviewed the details of the case with him that Gutierrez admitted the gang allegation. Moreover, counsel had indicated that, not only had Gutierrez agreed with her that he should enter a plea, which included the admission of a gang allegation, he had "been asking for an offer ever since the beginning of the case." Based on this record, it cannot be said Gutierrez's admission was untrue or made involuntarily without the assistance of counsel. (See *People v. Carter* (2003) 30 Cal.4th 1166, 1211 [under the circumstances presented, it cannot be said that trial "counsel's representation fell below an objective standard of reasonableness under prevailing professional norms" and that Gutierrez suffered prejudice as a result of counsel's actions]; see also *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.                                KITCHING, J.

12